THE McMINN EMPLOYMENT LAW FIRM, LLC
1000 Lafayette Boulevard, Suite 1100 ▪ Bridgeport, CT 06604 ▪ T: (203) 683-6007 ▪ F: (203) 683-9881

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **HEATHER POWER,** : | **CIVIL ACTION NO.** |
| : | **3:23-cv-01540-KAD** |
| Plaintiff : | |
| : | |
| v. : | **JURY TRIAL DEMANDED** |
| : | |
| **SMITH HOUSE OPERATING, LLC,** : | |
| **d/b/a THE VILLA AT STAMFORD** : | |
| : | |
| and : | |
| : | |
| **TENDER TOUCH REHAB** : | |
| **SERVICES, LLC,** : | |
| : | **JANUARY 9, 2024** |
| Defendant : | |

# FIRST AMENDED COMPLAINT[1]
# JURISDICTION AND VENUE

1. This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, codified as amended at 42 U.S.C. § 12101 et seq.; the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., as amended; Connecticut General Statues; and Connecticut State Law.

2. The jurisdiction of this court is founded upon 28 U.S.C. §1331 (federal question) and the provisions of 28 U.S.C. §1343.

3. Venue is proper in the District of Connecticut pursuant to 28 U.S.C. §1391(b) in that the claims arose in this district and Plaintiff resides in this district.

---

[1] This Amended Complaint is being filed pursuant to Civ. R. 15(a)(1).

-1-

4. Supplemental jurisdiction over Plaintiff's supplemental state law claims is invoked pursuant to 28 U.S.C. §1367 as the claims arise out of the same transaction and occurrences as Plaintiff's federal claims.

5. Costs, expert witness fees, and attorney's fees are sought pursuant to 42 U.S.C. §1988.

## **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

6. The Plaintiff received a Notice of Right to Sue from the Equal Employment Opportunity Commission in Charge No. 16A-2022-00709 against Defendant Smith House Operating, LLC, d/b/a The Villa at Stamford on August 30, 2023.

7. Plaintiff received a Release of Jurisdiction from the Connecticut Commission on Human Rights and Opportunities in Charge No. 16A-2022-00709 against Defendant Smith House Operating, LLC, d/b/a The Villa at Stamford on August 29, 2023.

8. The Plaintiff received a Notice of Right to Sue from the Equal Employment Opportunity Commission in Charge No. 16A-2022-00710 against Tender Touch Rehab Services, LLC, on August 30, 2023.

9. Plaintiff received a Release of Jurisdiction from the Connecticut Commission on Human Rights and Opportunities in Charge No. 16A-2022-00710 against Tender Touch Rehab Services, LLC, on August 29, 2023.

## **THE PARTIES**

10. The Plaintiff, Heather Power ("Plaintiff" or "Power") is a natural person and a resident of the town of Norwalk and state of Connecticut.

11. The Defendant, Smith House Operating, LLC, d/b/a The Villa at Stamford ("The Villa") is a Connecticut corporation located at 88 Rock Rimmon Road, Stamford, Connecticut 06903.

12. The Defendant Tender Touch Rehab Services, LLC ("Tender Touch") is a New Jersey corporation headquartered at 400 NJ-70, Lakewood, New Jersey, 08710 and contracts to do business located at 88 Rock Rimmon Road Stamford, Connecticut 06903.

13. Defendants each employ more than fifteen (15) employees.

## FACTUAL ALLEGATIONS

14. Plaintiff was hired by Tender Touch as a Speech-Language Pathologist and started on June 3, 2019.

15. Tender Touch was contracted to perform rehabilitation services for residents of The Villa.

16. The Villa was in the business of providing rehabilitation services to its short-term and long-term residents.

17. The Villa represents those who provide rehabilitation services to its residents as members of its staff.

18. The Villa represents the speech pathologists working with their residents as members of its staff.

19. The Villa represents the physical and occupational therapists working with their residents as members of its staff.

20. Residents of The Villa believed that Tender Touch employees were employed by The Villa.

21. The Villa determines what services are provided to its residents by Tender Touch employees.

22. The Villa has exclusive control over what services Plaintiff may perform for a

particular resident.

23. Plaintiff could not perform any service for The Villa residents without The Villa's approval.
24. Plaintiff's supervisors at Tender Touch could not approve any services performed for The Villa's residents.
25. Plaintiff could not perform a service for The Villa's residents over The Villa's objections.
26. On a daily basis, Plaintiff worked closely with The Villa's dietician and kitchen staff in order to provide services to The Villa's residents.
27. Plaintiff exclusively performed services for The Villa's residents.
28. Plaintiff did not perform services for residents of The Villa as a distinct occupation or business.
29. The Villa exercises complete control of where a Tender Touch employee performs their duties.
30. The Villa provided some of the materials used by Plaintiff in performing her duties.
31. Tender Touch does not have any dedicated offices at The Villa.
32. The Villa must grant Tender Touch employees access to any dedicated office.
33. Plaintiff exclusively worked at The Villa's Rock Rimmon Road facility.
34. Plaintiff was jointly employed by Tender Touch and The Villa.
35. Plaintiff's supervisor at Tender Touch was Diego Aguillon ("Aguillon.")
36. Aguillon is male.

### A. Plaintiff's Pregnancy.

37. Plaintiff is female.

38. In 2020, the Plaintiff became pregnant.

39. Plaintiff went on maternity leave from March 19, 2021 and returned on June 14, 2021.

40. Upon returning from maternity leave, Plaintiff was required to express breast milk at work due to lactation.

41. Tender Touch's employee handbook states that they are to work with the facility to locate a space, as The Villa holds all keys to offices.

42. Plaintiff informed Aguillon of her need to express breast milk while working.

43. Plaintiff requested that she be given time and a private space to express breast milk.

44. The Patient Protection and Affordable Care Act ("Affordable Care Act") amended Section 7 of the FLSA to require employers to provide reasonable break time for an employee to express breast milk for her nursing child for one year after the child's birth each time such employee has need to express the milk. *29 U.S.C. Section 207(r)(1)*.

45. Under the Affordable Care Act, employers are also required to provide a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to express breast milk. *29 U.S.C. Section 207(r)(1)*.

46. Aguillon told Plaintiff to use the Occupational Therapy kitchen to express breast milk.

47. The Occupational Therapy kitchen was used as a lunchroom and as Aguillon's personal office.

48. The Occupational Therapy kitchen contained a communal refrigerator, microwave, bathroom, Aguillon's desk, and a file cabinet.

49. The Occupational Therapy kitchen was adjacent to a gym used for physical therapy.

50. The Occupational Therapy kitchen frequently had staff and residents entering and exiting.

51. The Occupational Therapy kitchen lacked privacy.

52. Plaintiff was uncomfortable using her male supervisor's office.

53. The Villa was the only entity able to provide Plaintiff with access to an office with a lock on it.

54. In August or September 2021, Plaintiff contacted The Villa's Human Resources (The Villa's HR") for assistance.

55. The Villa was the only entity able to provide Plaintiff with access to an office with a lock on it.

56. The Villa's HR arranged for Plaintiff to use a private, unused office with a locking door and a refrigerator so that Plaintiff could express breast milk privately and free from intrusion.

57. The Villa's HR arranged for Plaintiff to use a private, unused office with a locking door and a refrigerator so that Plaintiff could express breast milk privately and free from intrusion.

58. When pumping, Power would close the door to the empty office.

59. Aguillon was aware that Power used the empty office to pump.

60. Aguillon was aware that Plaintiff closed the door to the empty office when she pumped.

61. On or about October 4, 2021, Showstead announced during a morning meeting that the office Plaintiff used to pump had been reassigned to another staff member for that staff member's full-time use.

62. No other space was provided at this time, and the Occupational Therapy kitchen was

-6-

once again given as the only space available.

63. Because Plaintiff was not given a private space to express milk, Power was forced to find a shared office in which she could pump.

64. This shared office was occupied by two other women, both of whom worked full-time (35+ hours a week).

65. This shared office had a refrigerator.

66. When pumping, Power would close the door to the shared office.

67. Aguillon was aware that Power used the empty office to pump.

68. Aguillon freely entered the office without knocking when Plaintiff was pumping with the door closed.

69. Multiple staff members entered the empty office while Plaintiff had the door closed so that she could pump.

70. Aguillon would ask the other women in this shared office how much time Power was spending expressing milk.

71. Plaintiff did not have a space free from intrusion in which to express breast milk.

72. Aguillon told Plaintiff to use the Occupational Therapy kitchen to pump.

73. Plaintiff told Aguillon that the Occupational Therapy kitchen was not private.

74. Over Plaintiff's objection, Aguillon told Plaintiff that she would use the Occupational Therapy kitchen to pump.

75. Aguillon then announced to the rehabilitation team members that Plaintiff would put a sign on the kitchen door when she was pumping.

76. Plaintiff was upset and embarrassed that she would be required to publicly announce when she was pumping by posting a sign.

77. Plaintiff contacted Tender Touch's Assistant Director of Human Resources Jessica Petersen ("Petersen") and reported that she no longer had a private space free from intrusion to express breast milk.

78. The Villa's Building Administrator Peter Showstead ("Showstead") and Maintenance Manager Allen Canales ("Canales") learned that Plaintiff required a private space to express breast milk.

79. Showstead and Canales arranged for Plaintiff to express milk in The Villa's beauty salon.

80. The salon did have a lock on its door.

81. Plaintiff learned that The Villa's beautician worked on Tuesdays and that Plaintiff would not be able to use the salon to pump.

82. Despite the salon being unavailable on Tuesdays, Plaintiff accepted the offer of the salon because she had no other options.

83. On Tuesdays, Plaintiff was required to pump in the bathroom or the previous shared office that was not free from intrusion, or private.

84. On October 8, 2021, Petersen advised Plaintiff that Aguillon was able to get approval and a key so that Plaintiff could use the salon to pump, then asked if Plaintiff was satisfied with the arrangement.

85. Plaintiff believed that the salon had more privacy than the Occupational Therapy kitchen.

86. Plaintiff told Petersen that the salon was a more appropriate space.

87. Aguillon knew that the salon was not used when a beautician was not present.

88. Aguillon had no reason to enter the salon.

89. Aguillon knew that Plaintiff would use the salon to express breast milk.

90. Aguillon knew that Plaintiff would close the door to the salon when she was pumping.

91. As Plaintiff began to use the salon to pump, she became filled with anxiety because she could not guarantee that no one knock while she pumped.

92. Despite moving to the salon, Plaintiff still suffered from intrusions from coworkers while expressing breast milk, if the beautician worked on a day other than Tuesday.

93. After Plaintiff began using the salon to pump, Aguillon began tell Plaintiff not to spend too long pumping.

94. Plaintiff was embarrassed by Aguillon's purposeful interruptions of Plaintiff's expressions of breast milk.

95. Plaintiff was offended by Aguillon's purposeful interruptions of Plaintiff's expressions of breast milk.

96. Plaintiff found Aguillon's purposeful interruptions of Plaintiff's expressions of breast milk to be disrespectful.

97. Plaintiff found Aguillon's purposeful interruptions of Plaintiff's expressions of breast milk to be harassment.

98. Aguillon interrupted Plaintiff's time pumping on multiple occasions.

99. Aguillon also began asking Plaintiff's coworkers how long Plaintiff spent expressing breast milk.

100. Plaintiff was embarrassed by Aguillon discussing her need to express breast milk with her coworkers.

101. Plaintiff found Aguillon's actions to be surprising, unnecessary, and invasive.

102. Plaintiff could no longer tolerate the extreme, offensive, and invasive behavior she endured while pumping.

103. On February 25, 2022, Plaintiff resigned her position at The Villa with Tender Touch because of the lack of an intrusion-free space to express breast milk and the harassment from Aguillon.

## COUNT ONE

### VIOLATION OF THE PATIENT PROTECTION AND AFFORDABLE CARE ACT (AN AMENDMENT TO THE FAIR LABOR STANDARDS ACT) AND THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201 ET SEQ., AS AMENDED

104. Plaintiff hereby incorporates Paragraphs 1-88 with the same force and impact as if fully set forth herein.

105. Defendants are an "employer," as defined by the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA").

106. Following the birth of her child, Plaintiff returned to work on June 14, 2021.

107. Power needed to express breast milk while on the job after her return to work in order to meet her infant's nutritional needs.

108. Power informed Tender Touch that she would need to express breast milk while working and was concerned about the lack of a separate space free from intrusion to express her breast milk.

109. Power informed The Villa that she would need to express breast milk while working and was concerned about the lack of a separate space free from intrusion to express her breast milk.

110. Defendants failed to adequately address Plaintiff's concerns and never offered her a place free from intrusion.

111. Defendants' conduct violated Section 4207 of the Patient Protection and Affordable Care Act, an amendment to the FLSA, 29 U.S.C. 218(d) by failing to provide a private place for Plaintiff to express breast milk.

112. Defendants failed to provide her with "a place, other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public" to be used by Plaintiff to express breast milk as required under 29 U.S.C. 218(d)

113. Section 215(a)(6) of the FLSA provides that it is "unlawful for any person … to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding…"

114. The enforcement provision of Section 215(a)(6) is found in Section 216(b). In pertinent part, Section 216(b) states:

Any employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purpose of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages. An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer … in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated … The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.53.

115. Section 215(a)(6) provides for a separate cause of action with separate remedies should an employer "discharge or in any other manner discriminate against" the

employee "because such employee has filed any complaint … under or related to" the Fair Labor Standards Act, including the express breast-feeding provision.

116. Plaintiff was harassed, discriminated against, and retaliated against after she engaged in protected activity by requesting a lace free from intrusion by coworkers and members of the public in which to express breast milk.

117. As a result of the Defendants' failure to provide Plaintiff with a space free from intrusion in which to express breast milk and constructive discharge, Plaintiff has suffered, and will continue to suffer damages, including but not limited, to substantial lost wages, fringe benefits, health insurance, retirement and pension benefits, mental and emotional distress and the ability to enjoy life's pleasures.

118. Plaintiff seeks damages as a result of Defendants' unlawful conduct.

### COUNT TWO

### PREGNANCY, SEX, AND GENDER DISCRIMINATION, IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

119. Plaintiff hereby incorporates Paragraphs 1-88 with the same force and impact as if fully set forth herein.

120. Defendants employ more than fifteen employees.

121. Plaintiff was qualified for her position.

122. The Plaintiff is a member of multiple protected classes based upon her female sex, gender, and pregnancy.

123. Lactation is a related medical condition of pregnancy for purposes of the Pregnancy Discrimination Act.

124. There is a close temporal relationship between (i) Power's efforts to secure appropriate

accommodations to express breast milk free from the intrusion of others, (ii) Defendants' negative reaction to those efforts, (iii) Defendants' failure to provide a secure space free from intrusion so that Plaintiff could express breast milk, (iv) Aguillon's ongoing and purposeful intrusions while Plaintiff was expressing breast milk, and (v) Plaintiff's constructive discharge.

125. Plaintiff was subjected to disparate treatment because of her female sex, gender, and pregnancy.

126. Plaintiff was discriminated against and retaliated against after she engaged in protected activity when she requested a reasonable accommodation for her pregnancy.

127. The Plaintiff suffered adverse employment actions, including, but not limited to, constructive discharge.

128. The above prescribed discriminatory actions were taken against the Plaintiff because of her female sex, gender, and pregnancy.

129. Defendants' conduct is unlawful and in violation of Title VII.

130. Defendants violated 42 U.S.C. § 2000e, et seq by discriminating against Power on the basis of her sex, gender, and pregnancy.

131. Defendants violated 42 U.S.C. § 2000e, et seq by constructively discharging Power on the basis of her sex, gender, and pregnancy.

132. As a result of the Defendants' unlawful conduct, Plaintiff has suffered, and will continue to suffer damages, including but not limited, to substantial lost wages, fringe benefits, health insurance, retirement and pension benefits, mental and emotional distress and the ability to enjoy life's pleasures.

133. Plaintiff seeks damages as a result of Defendants' unlawful conduct.

## COUNT THREE

### SEX, AND GENDER DISCRIMINATION,
### IN VIOLATION OF CONN. GEN STAT. § 46a-60(b)(1)

134. Plaintiff hereby incorporates Paragraphs 1-88 with the same force and impact as if fully set forth herein.

135. Defendants employ one or more employees.

136. Plaintiff was qualified for her position.

137. Plaintiff is a member of multiple protected classes based upon her female sex, gender, and pregnancy.

138. Lactation is a related medical condition of pregnancy for purposes of the sex and/or gender discrimination.

139. There is a close temporal relationship between (i) Power's efforts to secure appropriate accommodations to express breast milk free from the intrusion of others, (ii) Defendants' negative reaction to those efforts, (iii) Defendants' failure to provide a secure space free from intrusion so that Plaintiff could express breast milk, (iv) Aguillon's ongoing and purposeful intrusions while Plaintiff was expressing breast milk, and (v) Plaintiff's constructive discharge.

140. Plaintiff was subjected to disparate treatment because of her female sex, gender and pregnancy.

141. Plaintiff was harassed, discriminated against, and retaliated against after she engaged in protected activity when she requested a reasonable accommodation for her pregnancy.

142. The Plaintiff suffered adverse employment actions, including, but not limited to, being

constructively discharged on February 2, 2022.

143. The above prescribed discriminatory actions were taken against the Plaintiff because of her female sex, gender, and pregnancy.

144. Defendants' conduct is unlawful and in violation of Conn. Gen Stat. § 46a-60(b)(1).

145. As a result of the Defendants' unlawful conduct, Plaintiff has suffered, and will continue to suffer damages, including but not limited, to substantial lost wages, fringe benefits, health insurance, retirement and pension benefits, mental and emotional distress and the ability to enjoy life's pleasures.

146. Plaintiff seeks damages as a result of Defendants' unlawful conduct.

## COUNT FOUR

### RETALIATION,
### IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

147. Plaintiff hereby incorporates Paragraphs 1-88 and 104-118 with the same force and impact as if fully set forth herein.

148. Defendants employ more than fifteen employees.

149. Plaintiff engaged in protected activity by requesting a reasonable accommodation related to her pregnancy.

150. Defendants retaliated against Plaintiff by, among other things, harassing Plaintiff and constructively discharging Plaintiff's employment on February 25, 2022.

151. The above retaliatory actions were taken against the Plaintiff because of her female sex, gender, and pregnancy.

152. Defendants violated 42 U.S.C. § 2000e, et seq by retaliating against Power on the basis of her sex, gender, and pregnancy.

153. As a result of the Defendants' unlawful conduct, Plaintiff has suffered, and will continue to suffer damages, including but not limited, to substantial lost wages, fringe benefits, health insurance, retirement and pension benefits, mental and emotional distress and the ability to enjoy life's pleasures.

154. Plaintiff seeks damages as a result of Defendants' unlawful conduct.

## COUNT FIVE

### RETALIATION,
### IN VIOLATION OF CONN. GEN STAT. § 46a-60(b)(4)

155. Plaintiff hereby incorporates Paragraphs 1-88 and 119-131 with the same force and impact as if fully set forth herein.

156. Defendants employ one or more employees.

157. Plaintiff engaged in protected activity by requesting a reasonable accommodation related to her pregnancy.

158. Defendants retaliated against Plaintiff by, among other things, harassing Plaintiff and constructively discharging Plaintiff on February 25, 2022.

159. The above retaliatory actions were taken against the Plaintiff because of her female sex, gender, and pregnancy.

160. Defendants' conduct is unlawful and in violation of Conn. Gen Stat. § 46a-60(b)(4).

161. As a result of the Defendants' unlawful conduct, Plaintiff has suffered, and will continue to suffer damages, including but not limited, to substantial lost wages, fringe benefits, health insurance, retirement and pension benefits, mental and emotional distress and the ability to enjoy life's pleasures.

162. Plaintiff seeks damages as a result of Defendants' unlawful conduct.

## COUNT SIX

### PREGNANCY DISCRIMINATION,
### IN VIOLATION OF CONN. GEN. STAT. § 46A-60(B)(7)

163. Plaintiff hereby incorporates Paragraphs 1-88 with the same force and impact as if fully set forth herein.

164. Defendants employ more than fifteen employees.

165. Plaintiff was qualified for her position.

166. Plaintiff was subjected to disparate treatment because of her pregnancy.

167. The Plaintiff suffered adverse employment actions, including, but not limited to, being harassed, discriminated against, and constructively discharged on February 25, 2022.

168. The above prescribed discriminatory actions were taken against the Plaintiff because of her pregnancy.

169. Defendants' conduct is unlawful and in violation of Conn. Gen. Stat. § 46a-60(b)(7).

170. As a result of the Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer damages, including but not limited, to substantial lost wages, fringe benefits, health insurance, retirement and pension benefits, mental and emotional distress and the ability to enjoy life's pleasures.

171. Plaintiff seeks damages as a result of Defendants' unlawful conduct.

### COUNT SEVEN

### RETALIATION,
### IN VIOLATION OF CONN. GEN. STAT. § 46A-60(B)(7)

172. Plaintiff hereby incorporates Paragraphs 1-88 and 148-156, with the same force and impact as if fully set forth herein.

173. Defendants employ one or more employees.

174. Plaintiff engaged in protected activity by requesting a reasonable accommodation related to her pregnancy.

175. Defendants then retaliated against Plaintiff by, among other things, harassing Plaintiff and constructively discharging Plaintiff on February 25, 2022.

176. The above retaliatory actions were taken against the Plaintiff because of her pregnancy.

177. Defendants' conduct is unlawful and in violation of Conn. Gen. Stat. § 46a-60(b)(7).

178. As a result of the Defendants' unlawful conduct, Plaintiff has suffered, and will continue to suffer damages, including but not limited, to substantial lost wages, fringe benefits, health insurance, retirement and pension benefits, mental and emotional distress and the ability to enjoy life's pleasures.

179. Plaintiff seeks damages as a result of Defendants' unlawful conduct.

## COUNT EIGHT

### VIOLATION OF CONN. GEN. STAT. § 31-40(b) and (c)

180. Plaintiff hereby incorporates Paragraphs 1-88 with the same force and impact as if fully set forth herein.

181. Pursuant to Connecticut General Statute § 31-40w(a), Plaintiff had a right to express pressed milk at her place of appointment.

182. Defendants failed to provide a secure and private space for the Plaintiff to express her breast milk in violation of § 31-40w(b).

183. Defendants discriminated against the Plaintiff for exercising her right to express breast milk in the workplace in violation of Conn. Gen. Stat. § 31-40(c).

184. As a result of the Defendants' unlawful conduct, Plaintiff has suffered, and will continue to suffer damages, including but not limited, to substantial lost wages, fringe

-18-

benefits, health insurance, retirement and pension benefits, mental and emotional distress and the ability to enjoy life's pleasures.

185. Plaintiff seeks damages as a result of Defendants' unlawful conduct.

**PRAYER FOR RELIEF**

Wherefore the Plaintiff prays that this court award:

1. Money damages;
2. Costs;
3. Punitive damages, attorney fees, and expert witness fees;
4. Pre-judgment interest;
5. Trial by jury; and,
6. Such other relief as the Court deems just, fair, and equitable.

        THE PLAINTIFF,
        HEATHER POWER

        By: _____/s/_____
        Michael C. McMinn (#ct27169)
        **THE MCMINN EMPLOYMENT LAW FIRM, LLC**
        1000 Lafayette Blvd., Suite 1100
        Bridgeport, CT 06604
        Tel: (203) 683-6007
        Fax: (203) 680-9881
        michael@mcminnemploymentlaw.com

        *COUNSEL FOR PLAINTIFF*

## CERTIFICATE OF SERVICE

This is to certify that on this 9th day of January, 2024, a copy of the foregoing was filed electronically on the Court's CM/ECF system. Notice of this filing will be sent to all counsel of record for viewing via the Court's ECF system.

*/s/ Michael C. McMinn*